IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


MAREON L. BAILEY,          )
                                 )
          Petitioner,        )
                                 )
      v.                 )        Case No. 4:13-cv-00693-AGF
                                 )
TERRY RUSSELL,           )
                                 )
          Respondent.     )


## **MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner

Mareon L. Bailey for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

was charged with two counts of first-degree robbery and two counts of armed criminal

action.  Following a trial held in August 2009, the jury found Petitioner guilty of all

counts.  Petitioner was sentenced to concurrent sentences of 22 years on all counts.

For federal habeas relief, Petitioner argues that his constitutional rights were

violated by:  (1) trial counsel's failure to call an alibi witness, Donesha Robinson; (2) trial

counsel's failure to object when Petitioner was cross-examined regarding his prior

offenses; (3) postconviction appellate counsel's failure to raise all of Petitioner's claims

for postconviction relief on appeal; and (4) postconviction counsel's failure impeach or

object to the testimony of Petitioner's trial counsel at the postconviction hearing.  For the

reasons set forth below, habeas relief will be denied.

# BACKGROUND

## Trial

The evidence at trial showed the following. On July 31, 2008, shortly after 2:00 a.m., Leigh Kreft and Corey Davis were sitting in Davis's parked car in an alley. Kreft's car was parked behind Davis's car. They were approached by two black males on foot. One of the males pointed a gun at Davis and ordered Kreft and Davis to get out of Davis's car.

The second male then went into Davis's car and took Davis's wallet and Kreft's cell phone. He also went into Kreft's car, grabbed her purse, and rummaged through it. When he had trouble locating her money, Kreft helped him locate and take the little cash she had from her purse. During that time, Kreft was standing within a foot of the second male and had a clear picture of his face. Both males then left, Kreft and Davis went to the police station to report the incident, and Kreft provided descriptions of the perpetrators.

A few days after the robbery, Kreft bought a new cell phone and had the contact information from the stolen phone transferred to her new phone. From this information, she learned that the stolen phone had been used beginning approximately 15 minutes after the robbery to call three phone numbers. Kreft provided these phone numbers to Detective Thomas Walsh of the St. Louis Police Department.

Detective Walsh ran the phone numbers through police databases and discovered that they belonged to individuals Petitioner had previously listed to police as his contacts.

Detective Walsh pulled Petitioner's photo and discovered that he matched one of the descriptions provided by Kreft.

Kreft then identified Petitioner in a photo lineup, and later in a live lineup, as the robber who took her cell phone and money. In court, Kreft testified that she was one hundred percent certain that Petitioner was this robber. Davis was unable to identify anyone.

Petitioner testified at trial and admitted that he used the stolen cell phone to call his friends and relatives on the night of the robbery, but he stated that he purchased the cell phone from a man named Aaron Ricks. Petitioner testified that, on the night of the robbery, he was standing outside on the street in his old neighborhood[1] with several people, including Donesha Robinson. Petitioner testified that Ricks came to the neighborhood looking to sell a cell phone, that Ricks tried to sell the phone to Robinson but Robinson did not have cash, and that Robinson called Petitioner over to ask whether he wanted to purchase the phone. Petitioner testified that he gave Ricks marijuana for the cell phone and then used the cell phone to make the calls described above, in order to find a ride home.

Petitioner also testified regarding his prior convictions. On direct examination, he testified that he pled guilty to two charges of possession of a controlled substance in 2005, that he received a sentence of two years' probation on those charges, and that in

---

[1]     The record indicates that this neighborhood was a few miles away from where the robbery took place.

2007, he pled guilty to charges of first-degree tampering, resisting arrest, and leaving the

scene of an accident.

In response to questioning on cross-examination, Petitioner denied that his

probation on the possession charges was revoked. The State then asked to approach the

bench to discuss the line of questioning as to whether Petitioner's probation was revoked

as a result of the 2007 charges. The trial court permitted the State to ask whether

Petitioner's probation was revoked, and to impeach Petitioner if he denied that it was.

On subsequent questioning, Petitioner first denied that his probation was revoked, and the

State questioned Petitioner, without objection from Petitioner's trial counsel, as to

whether he was on probation when he pled guilty to 2007 charges. Petitioner then

responded affirmatively and testified that his probation was revoked as a result of the

2007 charges.

**Direct Appeal**

On direct appeal, Petitioner argued that the trial court erred by (1) granting the

State's motion in limine to prohibit Petitioner from testifying that Ricks matched the

physical description of the second robber; and (2) overruling Petitioner's objection to

Kreft's in-court identification of Petitioner. The Missouri Court of Appeals rejected both

of these claims.

**State Postconviction Proceedings**

In his motion for postconviction relief, Petitioner claimed that his trial counsel was

ineffective in (1) failing to call Robinson as a witness, and (2) failing to object when the

State cross-examined Petitioner about whether he had been on probation when he pled guilty to the 2007 charges.

At an evidentiary hearing beginning on September 16, 2011, Petitioner's trial counsel testified that he spoke to Petitioner about Robinson as a potential defense witness but that after interviewing Robinson, he decided she would not be a credible witness. Trial counsel testified that Robinson's memory of the night in question was that a black man approached her while she was with Petitioner's girlfriend, that the man tried to sell her a cell phone, that she called Petitioner on Petitioner's girlfriend's cell phone and informed him of this, and that Petitioner then came and purchased the phone. Trial counsel testified that when he talked to Petitioner about that night, Petitioner had told him that he needed to buy a cell phone so he could call someone to get a ride home. Trial counsel thought that Robinson's testimony would not corroborate Petitioner's story because if Petitioner had access to his girlfriend's phone, as Robinson would testify, Petitioner would not have needed to purchase a cell phone to call someone for a ride.

Trial counsel also testified that he agreed it was objectionable under state evidentiary law for the State to cross-examine Petitioner as to whether he was on probation when he pled guilty to the 2007 charges, and that allowing the questioning to occur might have caused the jury to view Petitioner negatively. However, trial counsel testified that he believed the jury could have deduced on their own that Petitioner was on probation at the time because Petitioner had already admitted that he was sentenced to two years' probation in 2005 and charged with the new offenses in 2007.

On cross-examination, the State asked Petitioner's trial counsel about all of the evidence against Petitioner at trial. In response to this line of questioning, Petitioner's trial counsel incorrectly testified that both victims identified Petitioner at trial.

The evidentiary hearing was continued until November 4, 2011, at which time Robinson testified. Robinson testified that in 2008 she was in an accident and that she could not recall being with Petitioner that year when someone tried to sell her a cell phone. She was not questioned further.

The motion court held that Petitioner's first claim of ineffective assistance of counsel failed because Petitioner's trial counsel articulated a valid strategic reason for not presenting the testimony of Robinson, and Robinson's testimony at the hearing did not demonstrate that she would have been a helpful witness. The motion court also held that Petitioner's second claim failed because the admission of evidence that Petitioner was on probation when he committed some of his prior offenses did not have any effect on the outcome of the case and therefore did not prejudice Petitioner.

The only claim that Petitioner preserved on appeal of the denial of his motion for postconviction relief was his claim relating to trial counsel's failure to object when the state cross-examined Petitioner about whether he had been on probation at the time he pled guilty to the 2007 charges. The Missouri Court of Appeals affirmed the denial of postconviction relief on this ground. The Missouri Court of Appeals held that trial counsel was not ineffective in failing to object because the prosecutor's questioning was permissible impeachment under state evidentiary law. The court further held that

Petitioner could not show a reasonable probability that, but for trial counsel's alleged error, the outcome of the trial would have been different.

**Federal Habeas Petition**

As noted above, in his federal habeas petition, Petitioner asserts that his constitutional rights were violated by (1) trial counsel's failure to call Robinson as an alibi witness; (2) trial counsel's failure to object when Petitioner was cross-examined regarding whether he was on probation at the time he pled guilty to the 2007 charges; (3) postconviction appellate counsel's failure to raise all of Petitioner's claims for postconviction relief on appeal; and (4) postconviction counsel's failure impeach or object to Petitioner's trial counsel's testimony at the postconviction hearing that both victims had identified Petitioner at trial.

## **DISCUSSION**

**Procedurally Defaulted Claim (Claim 1)**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Gordon v. Arkansas*, No. 15-1168, 2016 WL 3027276, at *6 (8th Cir. May 26, 2016) (quotation and citation omitted).

Here, as the State argues, Petitioner's first claim of ineffective assistance of counsel (Claim 1), based on trial counsel's failure to call Robinson as an alibi witness, was procedurally defaulted because, although raised in Petitioner's motion for

7

postconviction relief, it was not preserved on appeal from the denial of that motion.

*Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).  Petitioner cannot rely on a

claim of ineffective assistance of postconviction appellate counsel as cause to excuse the

procedural default.  *Id.* (distinguishing *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012)).

Petitioner also fails to show that a miscarriage of justice will result if his defaulted

claim is not considered.  *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (holding

that a petitioner must present new evidence that affirmatively demonstrates that he is

actually innocent of the crime for which he was convicted in order to fit within the

miscarriage of justice exception).[2]  In sum, Claim 1 will be denied as procedurally

defaulted.

**Non-Cognizable Claims (Claims 3 and 4)**

As the State correctly argues, "[f]ederal habeas courts are only authorized to

review the constitutionality of a state criminal conviction, not infirmities in a state post-

conviction relief proceeding."  *Jennings v. Groose*, No. 4:94CV1349 CDP, 2015 WL

1475663, at *2 (E.D. Mo. Mar. 31, 2015) (quotation and citation omitted).  Neither

ineffective assistance of postconviction counsel nor ineffective assistance of

postconviction appellate counsel gives rise to an independent claim for federal habeas

relief.  *See id.* (citing *Yarberry v. Sachse,* 2013 WL 3231539, at *5 (W.D. Mo. Jun. 26,

2013)); 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during

Federal or State collateral post-conviction proceedings shall not be a ground for relief in a

---

2        To the contrary, the record shows that trial counsel's decision not to call Robinson
was the result of reasoned trial strategy.

proceeding arising under section 2254.").  As such, Claims 3 and 4 will be denied as non-

cognizable.

**Ineffective Assistance of Trial Counsel Claim (Claim 2)**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism

and Effective Death Penalty Act ("AEDPA") provides that application for a writ of

habeas corpus cannot be granted unless the state court's adjudication:

1)  resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the
    Supreme Court of the United States; or

2)  resulted in a decision that was based on an unreasonable determination of
    the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes
> only the holdings, as opposed to the dicta, of [the Supreme Court's]
> decisions.  And an 'unreasonable application of' those holdings must be
> objectively unreasonable, not merely wrong; even clear error will not
> suffice.  To satisfy this high bar, a habeas petitioner is required to show that
> the state court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (citations omitted).

The Sixth Amendment guarantees a criminal defendant the right to effective

assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To show

ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's

performance was deficient" and that "the deficient performance prejudiced [his]

defense."  *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th

Cir. 2014). To show deficient performance, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citations omitted). To show prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When, as here, an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Here, the state courts reasonably held that trial counsel's failure to object when Petitioner was cross-examined regarding whether he was on probation at the time he pled guilty to the 2007 charges did not constitute ineffective assistance of counsel. The state

courts applied the correct legal principles to the claim, and reasonably found that trial counsel did not perform deficiently by failing to object to the State's questioning. Petitioner admitted on direct examination that he was sentenced to two years' probation beginning in 2005 and that he was charged with the additional offenses in 2007, and the jury could have deduced from that testimony that Petitioner was still on probation at the time of the 2007 charges. *Grooms v. Lockhart*, 919 F.2d 505, 508 (8th Cir. 1990) ("Trial counsel's failure to object to impeachment [of petitioner with regard to his criminal history] was not deficient because the record clearly reveals that [the petitioner] testified about his criminal history on direct examination.").

Moreover, in light of the other evidence of Petitioner's guilt at trial, the state courts reasonably found that the outcome of the trial would not have been different absent the impeachment. Accordingly, Claim 2 is without merit.

### CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Mareon L. Bailey for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2016.